ORIGINAL

# Time Charter

### GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  **This Charter Party**, made and concluded in *London* ................................................... **20th** day of *June* ................**2007**...19...
2  Between *MUR SHIPPING B.V., The Netherlands*.................................................................................................................................
3  Owners of the good *Malta flag*, built *1986*........ Steamship/Motorship **"KAROLINA"**...(See also Clause 53)................ of ...........................
4  of ..................................... tons gross register, and ..................................... tons net register, having engines of ................................................. indicated horse power
5  and with hull, machinery and equipment in a thoroughly efficient state, and classed .........................................................................................
6  at .............................. of about .............................. cubic feet bale capacity, and about ........................................ tons of 2240 lbs.
7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,
8  allowing a minimum of fifty tons) on a draft of ........................ feet ........................ inches on ........................ Summer freeboard, inclusive of permanent bunkers,
9  which are of the capacity of about ............................................................................ tons of fuel, and capable of steaming, fully laden, under good weather
10 conditions about ..................................... knots on a consumption of about ............................... tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,
11 now *Excpected ETA Rotterdam 19th June, best ETC/ETD 22nd June all going well/weather permitting*....................................................
12 ........................................................ and ..*WORLD WAVES SHIPPING*......................................... Charterers of the City of *Tehran / Iran*.

13 **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14 about— *One time charter trip via United Kingdom (intention Liverpool) to BIK for about 40 - 50 days without*
15 *guarantee, trading via safe port(s), safe berth(s), safe anchorage(s) always afloat with shredded scrap only, always excluding*
   *non-oily, non IMO classed, no heavy pieces, non military, no motor blocks and turnings, no metal borings and cuttings and*
   *always non radio active* within below mentioned trading limits.
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfillment of this Charter Party.
18 Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot, ROTTERDAM any time day or night,*
19 *Sundays and holidays included* ................................................................................................................................................
20 in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as
21 the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery to be
22 ready to receive *any permissible* cargo *(see Clause 56)* with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having
   water ballast, winches and
23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), *(acceptance of delivery by Charterers shall not*
   *constitute any waiver of Owners' obligations hereunder)* to be employed, in carrying lawful merchan-
25 dise, including petroleum or its products, in proper containers, excluding *See Clause 29* ...............................................................
26 (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,
27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports *and/or safe places in*
   British North
28 America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29 Mexico, and/or South America *always within Institute Warranty Limits (See Clause 63)* ................................................and/or Europe
30 and/or Africa, and/or Asia, and/or Australia, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31 October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic;
32 *(See Clause 100)*..............................................................................................................................................................
33 ...............................................................................................................................................................................
34 ...............................................................................................................................................................................
35 as the Charterers or their Agents shall direct, on the following conditions:
36   1.   That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; shall pay for the
37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38 the vessel in a thoroughly efficient state in hull, *cargo spaces,* machinery *and cargo gear* and equipment *with all necessary certificates to comply*
   *with any and all current requirements and regulations at ports of call* for and during the service.
39   2.   That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port *and canal* Charges, *Customary*
   *Pilotages, Agencies, Commissions,*
40 Consular Charges (except those pertaining to the Crew *and flag*), and all other usual expenses except those before stated, but when the vessel puts into
41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44 of six months or more.
45   Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47 for dunnage, they making good any damage thereto.
48   3.   That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on
49 board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ..............................................tons and not more than
50 ............................................tons and to be re-delivered with not less than.........................tons and not more than.........................tons.

51     4.    That the Charterers shall pay for the use and hire of the said Vessel at the rate of *U.S.$36,000 (Thirty Six Thousand Dollars) daily*
52 *including overtime payable every 15 (fifteen) days in advance. First Hire and value of bunkers on delivery to be paid latest upon*
*delivery and Charterers receipt of invoice (email/fax ok)* ~~United States Currency per ton on vessel's total deadweight carrying capacity, including~~
~~bunkers and~~
53 ~~stores, on~~ ............................................~~summer freeboard, per Calendar Month,~~ *daily hire* commencing on and from the day of her delivery, as aforesaid, and at
54 and after the same rate for any part of a *day* ~~month~~; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55 wear and tear excepted, to the Owners (unless lost) ~~at~~ *on passing Muscat outboung any time day or night, Sundays and Holidays included* ..
56 ................................................................................ unless otherwise mutually agreed. Charterers are to give Owners not less than *20 days*
57 *approximate* notice of vessels expected date of re-delivery *and re-delivery area*, and *15 / 10 days approximate notice of redelivery and*
probable port *and 5 / 3 / 2 / 1 days definite notice of redelivery*.
58     5.    Payment of said hire to be made *(See Clause 47)* ~~in New York~~ in cash in United States Currency, ~~semi-monthly~~ *15 days* in advance, and for the
last ~~half-month~~ *15 days* or
59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~
63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~
64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~ *(See Clause 42)*
65     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject
66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67 of such advances. *All deduction to be supported by relevant original invoices/vouchers as soon as same received from the agents by*
*Charterers.*
68     6.    That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe place or safe anchorage* that Charterers or
their Agents may
69 direct, provided the vessel can safely lie always afloat at any time of tide, except at such places *in Brazil, River Plate, Fredrilkstad, Sauda and*
*Buaventura included on the following conditions: If Charterers decide to call the port of Sauda, then arrival draft to be*
*maximum 32 feet. Also, if reasonably required by the Master, Charterers to provide adequate fenders to the Master's*
*satisfaction. If Charterers direct Vessel to Fredikstad, then maximum arrival draft to be 9.8 metres. Also if reasonably required*
*by the Master, Charterers to provide adequate fenders to the Master's satisfaction, and Buaventura where it is customary for*
*similar* where it is customary for similar size vessels to safely
70 lie aground.
71     7.    That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~
74 ~~paying Owners~~ ........................................~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
75 ~~incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers allowed.*
76     8.    That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78 agency; and Charterers are to load, stow, ~~and~~ trim */ lash / unlash / secure / unsecure and discharge* the cargo at their expense under the supervision of
the Captain, who is to sign Bills of Lading for
79 cargo as presented, in conformity with Mate's ~~or Tally Clerk's~~ receipts. *(See Clause 37)*
80     9.    That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.
82     10.    That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
84 rate of *U.S.$14.00* ~~$1.00~~ per day. ~~Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally~~
85 ~~Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling.~~ *Victualling / Entertainment / Cables / Telexes*
*/ Communication expenses to be paid by Charterers at U.S.$1,500 (One Thousand Five Hundred Dollars) per month / pro rata.*
*In case person travelling onboard only against Letter of Indemnity to be submitted prior to/latest on boarding.*
86     11.    That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-
89 sumption of fuel *as well as wind and sea conditions - all in English Language*.
90     12.    That the Captain shall use diligence in caring for the ventilation of the cargo.
91 ~~13.    That the Charterers shall have the option of continuing this charter for a further period of~~ ................................................................................
92 ................................................................................................................................................................................................................
93 ~~on giving written notice thereof to the Owners or their Agents~~ ............................................~~days previous to the expiration of the first-named term, or any declared option.~~
94     14.    That if required by Charterers, time not to commence before *0001 hours 22nd June, 2007* ............................................ and should vessel
95 ~~not have~~ *not be delivered* ~~given written notice of readiness~~ on or before *2359 hours 28th June, 2007* ................... but not later than 4 p.m. Charterers or
96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.
97     15.    That in the event of the loss of time from deficiency *and/or default, and/or strike of crew* ~~of men~~ or *deficiency of* stores, fire, breakdown
or damages to hull, machinery or equipment,
98 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
99 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; *and all extra directly related expenses may be*
*deducted from the hire* and if upon the voyage the speed be reduced by
100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
101 thereof, and all extra expenses shall be deducted from the hire.

102    16.   That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.
105    The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the
106 purpose of saving life and property.
107    17.   That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at **London** ~~New York,~~
108 one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for
109 the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men **and experienced in shipping**
**.This Charter Party and any dispute(s) arising hereunder or connected herewith shall be governed by and construed in**
**accordance with English Law, both regards substance and procedure, and English jurisdiction to apply (See Clause 86).**
110    18.   That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Aver-
111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113 might have priority over the title and interest of the owners in the vessel.
114    19.   That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115 Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116 York-Antwerp Rules **1974** ~~1924~~, **in London and any subsequent amendments thereto,** ~~at such port or place in the United States as may be selected~~
~~by the carrier,~~ and as to matters not provided for by these
117 Rules, according to the laws and usages at the port of **London** ~~New York.~~ In such adjustment disbursements in foreign currencies shall be exchanged into
118 United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at
119 the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or
120 bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier
121 or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if
122 required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the
123 carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the
124 place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in
125 United States money. **Hire not to contribute to General Average.**
126    ~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131 ~~ships belonged to strangers.~~
132    Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
133    20.   Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the
134 cost of replacing same, to be allowed by Owners.
135    ~~21.   That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~ **(See Clause 74)**
138    ..................................................................................................................................................................................
139    ..................................................................................................................................................................................
140    22.   Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks/**cranes/grabs**) capable of handling lifts up to **their maximum**
**capacity as specified in Clause 53** ~~three tons,~~ also
141 providing ropes, falls, slings and blocks. ~~If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel **power and electric light on deck**
**and in cargo holds sufficient for night work in all holds simultaneously.** ~~lanterns and oil for~~
143 ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~ The
144 Charterers to have the use of any gear on board the vessel.
145    23.   Vessel to work night and day, if required by Charterers, and all ~~winches~~ **cranes/grabs** to be at Charterers' disposal during loading and discharging;
**all winchmen/cranemen to be provided any paid by the Charterers.**
146 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~
147 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
148 ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or~~
149 ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
150 ~~thereby.~~
151    24.   It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;
153 etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, **agreed to include**
**Protective Clauses as per Clause 48** both
154 of which are to be included in all bills of lading issued hereunder:
155                   U. S. A. Clause Paramount **where applicable**
156 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
157 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
158 any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
159 be repugnant to said Act to any extent, such term shall be void to that extent, but no further.
160                   Both-to-Blame Collision Clause **as attached**
161 ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162 ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
163 ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~
164 ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165 ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~

166 ~~owners as part of their claim against the carrying ship or carrier.~~
167 25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging. *Vessel not to force ice or follow ice breakers.*
170 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, insurance, crew, and all other matters, same as when trading for their own account.
172 27. A commission of ~~2 1/2~~ *1.25* per cent is payable by the Vessel and Owners to *Icap Hyde & Co Ltd, London plus 1.25 per cent to Abaco*
173 *Marine plus 1.25 per cent to Pole Shipping* ................................................................................................................................................
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175 28. An address commission of ~~2 1/2~~ per cent payable to ....*1.25*.............................................. on the hire earned and paid under this Charter.

*Clauses 29 - 104 (both inclusive), as attached hereto, are deemed to be incorporated and form part of this Charter Party.*

**OWNERS:**                                    **CHARTERERS:**

*For and on behalf of Owners,*
*Messrs. MUR Shipping B.V., The Netherlands*
*as per their email authority, dated 25-09-07*

*For Icap Hyde & Co. Ltd*
*Director*
*As Brokers only*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship
Brokers & Agents (U.S.A.), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the
insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having
been made by the licensee or end user as appropriate and not by the author.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**29. Cargo Exclusions**
**A)** All cargoes to be loaded stowed discharged in accordance with IMO/SOLAS recommendations of code of safe practice for solid bulk cargoes. Always trading with legal harmless non dangerous cargoes as per IMO Regulations, however, always excluding:

Arms, ammunitions, explosives, blasting caps, detonators, radioactive materials, nuclear prods or waste, chemical waste of any description, livestock of any description ,wet or bulk hides, acids, flammable, Injurious or corrosive materials, petroleum or its products, naphtha, motor spirits, turpentine or its products, petcoke (see below), pitch in bulk, asphalt in bulk, carbon black in bulk, tar/bitumen or any of Its products, creosoted goods, resin, bulk cement, bulk cement clinker (see below), asbestos, copper ore, saltpetre, ferro phosphorous, fishmeal, nickel ore, turpentine, DRI and iron ore briquettes, HBI, sponge iron, scrap of any kind (see below), copra or its prods, expellers, tapioca or manioc pell, cotton, meat bone meal, sunflower seeds, calcium carbide, calcium nitrate, salt (see below) , pitch in bulk, metal sulphide concentrates, ferro silicon, silicon manganese, calcium hydrochloride, calcium hypochlorite, borax, magnesium nitrate, Chilean nitrate of soda, ammonium nitrate, potassium nitrate, sodium nitrate, ammonium sulphate, dangerous fertilisers, caustic soda, sulphur (see below), aluminium nitrate, aluminium silicone, aluminium Ferro silicone.

Bagged cement and bitumen in drums are allowed. Any material which may liquify is not allowed.

Concentrates to be loaded/stowed/discharged always In accordance with IMO Regulation and Charterers/shippers to provide master with moisture certificate issued by authorized organization showing that moisture content in cargo is within acceptable transportable limits as required by IMO. Charterers are permitted to load upto 200 mt injurious inflammable or dangerous cargo (excluding arms, ammunitions, explosive or radioactive goods) provided these are labeled, packaged, loaded, stowed, carried, discharged in accordance with IMO and other international and local regulations and in accordance with Vessel's certificates and in accordance with the regulations at port of loading, port of discharge and any intermediate ports.

Charterers are allowed to load harmless, non IMO agriproducts requiring co2. Charterers are allowed to load bulk harmless fertilizer grades.

If any extra insurance premium or any expenses are incurred in connection with such cargo, same to be for Charterers account.

Charterers are not permitted to load any cargo breaching an embargo.

All cargoes to be loaded in accordance with Vessel's certificates and with the requirements and/or recommendations of IMO for the Vessel of this type.

Logs and sugar (bagged or bulk) ex /to Indonesia is excluded.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**B)** Notwithstanding the provisions of paragraph A) hereof, Charterers are allowed to employ the Vessel in carrying
MAX 3 CARGOES OF SCRAP INCLUDING HMS 1+2 AND SHREDDED
SCRAP PER ANNUM, BUT SAME TO INCLUDE MAX 2 CARGOES OR
HMS 1+2 PER ANNUM, (I.E. ANY COMBINATION OF 2 HMS +1
SHREDDED OR 2 SHREDDED +1 HMS OR 3 SHREDDED

However, cargoes mentioned above are not to be loaded as last cargo under this Charter Party and not to be carried on consecutive basis.

In the case Vessel loads scrap following clause to apply:
Scrap to be non oily and non military and excluding motor blocks and turnings and also metal borings and cutting. Scrap is to be loaded in accordance with tank top strengths, Charterers /Sub Charterers an/or their stevedores are to lower the cargo softly down, as close to the tank top as possible to the Master satisfaction until a layer of cargo is built up over the entire tank top area before proceeding to load in normal manner. Master has the right to stop the loading operations should stevedores/or other loading personal fail to comply with the above and/or endanger the Vessel and for her equipments/fittings at any stage of loading. Vessel always remaining on Hire. Charterers to supply protecting mat on ships deck for prevention of possible damage of falling cargo, but subject to custom of the port of loading and discharging. It scrap is carried, Charterers to pay lumpsum of USD 5000 with next regular hire payment.

**C)** Notwithstanding the provisions of Paragraph A) hereof; Charterers are allowed to employ the Vessel in carrying a maximum of 12 cargoes in total in any combination out of bulk cement clinker, bulk sulphur or petcoke during total duration of this Charter Party (i.e. total number of times Vessel employed in carrying either bulk cement clinker, bulk sulphur or petcoke not to exceed 12 times during this Charter Party), under following conditions:

Above stated cargoes are not to be loaded as last cargo and not as consecutive basis. Prior to loading, surfaces within the holds to be coated/protected in Charterers time by shore labour or Vessel's crew using materials so called bold block (NB- or similar, cost of shore labour and/or Vessel's crew and materials using tools for application and materials/tools for removal called 'hold wash' to be supplied and paid by the Charterers as per Charterers' executed pro forma Charter Party. If Charterers request Vessel's crew to perform coating/protection of Vessel's holds, Charterers are to agree lumpsum directly with the Master which is to be paid in addition to intermediate hold cleaning clause. Supply of materials as mentioned above including but not limited to application tools to be for Charterers' account. During coating Vessel to remain on hire.

If, under Master's discretion, after discharge, washing with fresh water is required, same to be done under the following conditions:
Crew shall thoroughly clean the Vessel to the best of their abilities with fresh water after discharge of above stated cargoes to the satisfaction of the master. Fresh water used for such operations will be for Charterer's account.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**Salt**
Charterers have the option to load max 4 cargoes of rock salt from either Peru or Chile during total duration of this Charter Party, however same not to be loaded as last cargo. Vessel not to load consecutive salt cargoes and following clause to apply:

If Charterers load salt which require hold painting or hold block no 10 (instead of lime/white washing), materials/tools for such operations to be supplied and paid by Charterers. In case of lime washing, Charterers shall instruct crew to lime wash the Vessels' holds prior loading and to thoroughly clean the holds with fresh water after discharge to the satisfaction of the master. Fresh water used for such operations will be for Charterers' account Charterers shall provide lime and all necessary equipment and to pay special bonus to the crew which shall be agreed between Charterers and Master directly in addition to the payments in Intermediate Hold Cleaning Clause. All time and expenses to be for Charterers' account Should local shore regulations not permit lime washing by crew, shore labor to for Charterers' account.

**30.**
In the event of breakdown or disablement of winch(es) and/or crane(s) and/or lack of or insufficient power, preventing the efficient working of winch(es) and/or crane(s), and provided same is not resulting from Charterers'/Shippers'/Receivers' appointed stevedores or any other Charterers' servants mishandling, the hire for such period of inefficiency to be reduced proportionally to the number of cargo winch(es) and/or crane(s) actually affected. It is understood that in no case no loading/discharging operations can be done due to all vessel's gear being inoperative and no shore/mobile cranes available, vessel to be completely off hire during all such time. Owners' may pay the costs of hiring shore appliances in lieu of such ineffective gear, in which case to be kept on full hire.

**31.**
With reference to Clause 8 of this Charter Party, "customary assistance" shall mean all types of work provided in accordance with crew's respective local unions'/port authority's regulations which the Master and the crew would normally do when the ship is trading for the Owners' account such as, but not limited to:

**a)** All opening and closing of hatches in preparation for loading and discharging, if permitted by local authorities.

**b)** Closing and opening of Hatches in the event of weather which may adversely affect condition of cargo carried on board during loading and discharging.

**c)** Shifting ship during loading and/or discharging and shifting berth.

**d)** Ship's crew to shape up cargo gear and hatches as far as possible before arrival at loading and/or discharging docks and/or places so that loading and/or discharging can commence promptest possible after arrival.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**e)** Lashing and/or unlashing of cargo.

The Master shall take care of, to the best of his ability, all gear, equipment, and/or stores supplied to the vessel by or for the Charterers' account and the Master shall keep a record of all such gear, equipment and/or stores so supplied. The Master to maintain same in good condition. Such gear, equipment and/or stores to be redelivered to the Charterers prior to redelivery of the vessel to the Owners or if required by the Charterers, at any time during the Charter in like good order and condition as supplied (normal wear and tear excepted).

Charterers agree to pay crew bonus for the above mentioned work (e). Such bonus to be agreed directly between Charterers and Master and paid to Master directly.

**32.**
If the vessel calls at any U.S. Port for purposes of loading or discharging vessels cargo gear and all other equipment shall comply with current regulations. If Longshoremen are not permitted to work due to failure of the Master and/or Owners and/or Owners Agents to comply with the aforementioned regulations, any delays including but not limited to standby costs for Longshoremen resulting therefrom, shall be for Owners' account.

Vessel shall be and remain in possession of an International Cargo Gear Certificate showing all gear and/or derricks to be in order. This Certificate to be shown to Charterers or their Agents, if required by them.

**33.**
Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the vessel caused by stevedores provided the master has notified the Charterers and their agents in writing in English language latest within 24 hours after occurrence of damage except for hidden damage as soon as practical but not later than 24 hours after any damage is discovered however in any case latest 24 hours after completion of loading or discharging operation respectively prior sailing port in question provided vessel is sailing during daylight-office hours. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

**(a)** In case of any and all damage(s) affecting the Vessel's class seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society. Expenses of arranging such survey will be on Charterers account.

**(b)** Any and all damage(s) not described under point (a) above shall be repaired at the same time, but if this is not possible, same shall be repaired whilst Vessel is in drydock in the Owners' time, provided this does not interfere with the Owners repair work. In such case (repairing at drydock) no hire and for expenses will be paid to the Owners except and in so far as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceeds the time and/or expenses necessary to carry out the Owner's work.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

The Charterers shall pay for stevedore damage whether or not payment has been made be stevedores to the Charterers. All repairs under this clause are to be done in accordance and on satisfaction of vessel's Class society.

**34.**
Charterers are to have the privilege of flying their own house flag and painting their markings on vessel's funnel and/or sides, and Charterers to restore Owners' markings before redelivery at Charterers' time and expense.

**35.**
Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint surveyors, for their respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct joint on-hire off-hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition of the Vessel. A single report shall be prepared on each occasion and signed by each surveyor, without prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree. If either party fails to have a representative attend the survey and sign the joint survey report, such party shall nevertheless be bound for all purposes by the findings in any report prepared by the other party. On- hire survey shall be on Charterers' time and off-hire survey on Owners' time.

In the last discharge port prior vessel sailing to shipyard or latest prior entering shipyard the parties shall, unless otherwise agreed, each appoint surveyors, for their respective accounts, who shall conduct joint off-hire survey, for the purpose of ascertaining quantity of bunkers on board and the condition of the Vessel. All expenses for damages caused by Charterers / Charterers' Agent / Stevedores will be for Charterers account. Owners will provide Charterers with the Original invoice from the shipyard for all such proven damages and amount in question is to be paid to the Owners within 8 banking days after Owners have sent a fax copy of such invoice to Charterers.

On vessel leaving the shipyard or latest before loading first cargo after the shipyard the parties shall, unless otherwise agreed, each appoint surveyors, for their respective accounts, who shall conduct joint on-hire, for the purpose of ascertaining quantity of bunkers on board and the condition of the Vessel.

**36.**
Owners warrant that the vessel has not traded North Vietnam since January 1962, and has not traded CIS Pacific ports within the last two years. Owners also warrant that the vessel is not black Listed by the Arab Countries. Owners warrant that the vessel is eligible for bunkering and/or taking stores/provisions in all countries within trading limits. Owners warrant that the vessel has not called Cuba within the last 180 days.

**37.**
Master to authorise Charterers Agents to sign Bills of Lading on his behalf, in strict conformity with Mate's and tally clerk's receipts.



## RIDER CLAUSES TO M.V "KAROLINA"
## CHARTER PARTY DATED 20TH JUNE 2007

In such case Charterers indemnify Owners in the event of discrepancies between Bills of Lading and Mate's receipts. The discharge port shown in the Bill of Lading is not to constitute a declaration of discharge port and Charterers have the right to any port within terms of this Charter Party. The Charterers will indemnify the Owners as per Owners Standard P & I Club wording against any claims brought by the Bill of Lading holder by reason of change of destination.

**38.**
Vessel to be delivered with holds clean/free of loose rust and/or previous cargo residue/odorless to the satisfaction of Charterers/independent surveyors. In case holds are rejected vessel to be placed off-hire from the time of her rejection until passes same inspection again.

Charterers shall have the option of redelivering the vessel without cleaning of holds against paying the Owners a lump sum of U.S.$4,000 excluding dunnage removal.

**39. War Risk Insurance Clause**
Basic annual war risk insurance on vessel and for crew to be for Owners' account. Any extra and/or additional war risk insurance premium charged by Owners Underwriters by reason of vessel's trading under this Charter Party to be for Charterers' account, however, same not to exceed what would have been quoted or charged if the vessel was covered on the London market and to be refunded to Owners by Charterers upon receipt of copies of Owners Underwriters net invoices.

Any blocking/trapping insurance to be for Owners' account.

**40.**
Charterers have the right to withhold from Charter Hire during the period of this Charter, such amounts due for undisputed off-hire and Owners disbursements/advances, but proper supporting statement to be sent to Owners promptly. However, Charterers have the obligation to Inform Owners prior to any deduction from hire to be made.

Charterers have the right to withhold from last sufficient hire, maximum U.S.$ for vessel's disbursements/advances, and also the value of redelivery bunkers.

**41.**
In the event that the vessel is delayed by strikes, lock-outs, labor stoppages, or any other difficulties due to Ownership or in connection with the crew of the vessel, such time lost to be for Owners' account, including bunker fuel consumed during such periods.

**42.**
With reference to Clause 5, the Owners to give Charterers three (3) London banking days written notice, excluding Sundays and Holidays, to rectify a failure to make punctual and regular payment before exercising their right of withdrawal.



## RIDER CLAUSES TO M.V "KAROLINA"
## CHARTER PARTY DATED 20TH JUNE 2007

**43.**
Should the vessel put back whilst on voyage by reason of an accident or breakdown, the hire shall be suspended from the time of putting back until she be again in the same or equidistant position or regain the line of voyage whichever is shorter distance to the port where the Vessel is originally destined position and the voyage resumed therefrom.

**44.**
Normal quarantine time and expenses to enter port for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness etc., of the vessel's Master, Officers and crew to be for Owners' account.

**45.**
Any delays and/or expenses or fines incurred on account of smuggling by vessel's Officers and crew to be for Owners' account.

**46.**
Owners and Charterers agree that they will apportion liability for cargo claims on the basis of the Inter P & I Club Agreement on the New York Produce Exchange Form, as amended 1996, and its subsequent amendments and either contribute settlement funds or indemnify each other accordingly except that Charterers expressly undertake liability for all cargo claims for shortage in Africa which to be for Charterers' account and handled by Charterers' P and I Club who will issue any and all guarantees required by the receivers as per Bills of Lading in order to release the Vessel front any arrest/detention/delay and the Vessel will be on-hire all time during such arrest or detention or delay whatsoever, but Owners are under the obligation to assist Charterers in defending such cargo claim by providing ship's records or any other info required by Charterers and or their P and I Club.

Further, in so far as Charterers and/or Agents may be called upon to grant extension of time to claimants, the Charterers will not grant extension of the time suit on Owners' behalf beyond the statutory one year of the Hague Rules without Owners prior express written authorization

**47. Owners Banking Details:**
Please kindly note:
1) Physically MUR's account is held in London at Chase Manhattan Bank London.
2) The beneficiary name of MUR's account at Chase is: Firstrand Bank Ltd. A/C#2200-2810
3) Remitting customer's banker need to ensure that the MT-100 is sent to Chase Manhattan Bank London (Swift CHASGB2L) and not, repeat not to Firstrand Bank Limited.

Noting the above please kindly on-pass the below message to your bankers to ensure a smooth transfer of funds.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

Bankers:      JP Morgan chase Manhattan bank London (SWIFT CHASUGB2L)
               P.O. Box 440, London, United kingdom.
Sort Code:   60-92-42
Iban No.      GB24 CHAS 609242 22002810
Beneficiary:  Firstrand Bank Ltd
               C/O JP Morgan Chase Manhattan Bank London
               P.O. Box 440, London, United kingdom.
Account No:  22002810

Special Advise: For further credit to MUR Shipping Holdings BV A/C 1801028001
Corresponding Bank: Chase Manhattan Bank New York (Swift CHASUS33)
Send MT-103 directly to Chase Manhattan Bank London.

NB: The below message is vital for your bankers.

MT-100 instructions should read as follows:
Destination:                   CHASGB2L
Field 50:                     The by order party
Field 54:                     CHASUS33
Field 57D: Account with institution:   CHASGB2L
                                   Chase Manhattan Bank London
Field 59: Beneficiary customer     A/C No. 22002810
                                   Firstrand Bank Limited
71A:  Detail of charges           Applicant
72:     Sender to receiver info     FFC MUR Shipping Holdings BV
                                   A/C No. 1801028001

**48.**
The New Jason Clause, New Both to Blame Collision Clause, P and I Bunkering Clause,
Chamber of Shipping Clause Paramount and Bimco Voywar, Paramount for Voyages to or from
Canadian Ports, ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005, US Security
Clause for Time Chartering, BIMCO Fuel Sulphur Content Clause for Time Charter Parties, U.S.
Customs Advance Notification/AMS Clause for Time Charter Parties are deemed to be
considered part of this Charter Party.

All the above clauses to be incorporated in all Bills of Lading issued under this Charter Party.
No through, liner, Al Valorem Bill(s) of Lading nor any Bill(s) of Lading containing Hamburg
rules where not compulsory applicable to be issued under this Charter Party.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**49.**
Charterers to have full cargo rights on deck always within Master's discretion in accordance with Vessel's trim and stability, IMO Regulations and Department of Trade and Industry or the equivalent authority regulations at loading port or ports. In the event of any dispute arising in connection with deck cargo, vessel's Classification Society ruling to be final as to seaworthiness and suitability. The Vessel could be able to sail with slack and empty holds depending on the cargo, quantity of the cargo etc., but such loading and discharging operations to be arranged in conformity with Vessel's trim, stability plan and Vessel's strength, and always to Master's satisfaction.

All uprights and lashings etc., for deck cargo are to be supplied by Charterers.

All Bills of Lading issued for deck cargo to be claused in respect of such cargo, 'Carried on deck at Shippers risk without responsibility for loss or damage howsoever caused" or if from and to USA or it's territories "Carried on deck at Shippers risk as to perils inherent in such carnage but in all other respects subject to the provisions of the United States carriage of goods by Sea Act 1936".

Sufficient notice of intent to load a deck cargo to be given to Owners/Master to enable them to call for a Surveyor to supervise deck cargo loading plan.

**50.**
If the Owners elect not to appoint their own Agents at any port of call and wish the Charterers to undertake Owners Agency work, a fee will be charged by the Charterers commensurate with the standard scale in accordance with the customary practices in that port, but crew mail, cash to Captain, crew changes and similar minor services to be free of such fee - within reason, but no basic Agency Fee to be for Owners' account.

**51.**
The Owners of the vessel guarantee that the minimum terms and conditions of employment of the crew of the vessel are now and will be prior presentation of the vessel and remain for the period of this Charter Party covered by an ITF Agreement or a Bona Fide Trade Union Agreement acceptable to the ITF.

Losses of time and expenses caused to the Charterers due to the delay of the vessel or interference with Charterers use of the vessel by strikes or labor (Union or Workers) manifestations or stoppages in any form on account of the vessel's flag, registry, Ownership, maiming or wage pattern or her previous trading to be for Owners account.

**52.**
Charterers are to be allowed to utilize the full reach and all spaces of the vessel for cargo, but same to be loaded, stowed, trimmed, secured unsecured, lashed, unlashed and discharged under Master's supervision.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**53. Description Clause**
M/V "Karolina"
SDBC Log
37,197 DWT on 11.050 m SSW
Malta Flag
Built 1986
LOA / Beam: 186.7 m / 28.40 m
5 Holds / Hatches
4 x 25 mts Cranes (outreach 9 m)
Grain/Bale: 1,649,712 cbft / 1,567,224 cbft
About 13 Knots on about 23 mts IFO (180 Cst) + about 2 mts MDO
PI: About 2 mts MDO
PW: About 3 mts MDO (basis 1 shift 8 hours)

ALL DETAILS ABOUT WITHOUT GUARANTEE

Further Description
Malta flag, built 1986 NKK NS*(BC)MNS* Single deck log bulk carrier
Inchon Engineering Sulzer 5RTA58 8,150 BHP
DWAT 37,197.4 MT (36,609.81 LT) on 11.050m/36'3"
Grain/Bale 1,649,712 / 1,567,224 ft3 (46,714.6 m3/44,378.8 m3)
About 13K on about 23 MT IFO (180 CST RMEI80) + about 2 MT MDO (DMB)
Basis up to Beaufort Force 4 and Douglas seastate 3 with no adverse currents/swell

PC/24 hrs: idle 2 MT MDO/Working) 3 MT MDO (basis 1 shift 8h)
Uses MDO in MI/E when manoeuvring / in canals / rivers / shallow waters /etc
Port Consumption in cold weather + 1MT IFO per day extra
Bunker specs: to conform to ISO 8217:2005(E) specifications (and any amendments hereto) of
quality RME180 for IFO 180CST and DMB for MDO. ULO (Used Lubricating Oil) or other
waste products are strictly not permitted and not to be included in the bunkers supplied.

4 Cranes at 25 MT SWL (outreach about 9m)
5 Holds/Hatches (MacGregor folding type wire pull)
All 19.0m by 14.4m (All 62'4" by 47'3"ft)

| Grain holds | ft3 / m3 | Bale holds | ft3 / m3 |
|---|---|---|---|
| 1. 278,693 | / 7,891.7 | 1. 264,758 | / 7,497.1 |
| 2. 344,636 | / 9,759.0 | 2. 327,406 | / 9,271.1 |
| 3. 345,074 | / 9,771.4 | 3. 327,819 | / 9,282.8 |
| 4. 345,071 | / 9,771.3 | 4. 327,816 | / 9,282.7 |
| 5. 336,238 | / 9,521.2 | 5. 319,425 | / 9,045.1 |
| 1,649,712 | / 46,714.6 | 1,567,224 | / 44,378.8 |



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

T/S tanks water ballast only
LOA 186.70m/612'6" LBP 178.0m/584'
BEAM; (extreme) 28.40m/93'2" DEPTH: 15.6m

INTERNATIONAL GT/NT : 22,574/12,373 PANAMA GRT/NRT: 23,849/18,786
SUEZ GRT/NRT: about 22,906/18,437
Strengths (MT/m2) Hatch:2.2 Deck sides: 3.2 T/T: No.3 19.36 All others 14.048
Strengthened for heavy cargoes/No 2+4 may be empty the same time Australian hold ladders fitted.
Fire fighting in holds by: C02

Fully fitted with permanent/collapsible steel stanchions & sufficient lashing material for logs trading. Stanchion height No1 5.4 m/No.2-5 6.2m
Constants 500 MT (Excluding FW)
FW Capacity: 290 MT (Evaporator capacity upto about 12 tons/day at sea only)
Bunker Capacity IFO: 1,300 MT MDO: 200 MT
Ballast Capacity: 11,501MT + 10,000 MT (No 3) = 21,501 MT
Radar Mast to keel: 45.8m (151 ft)

All details about. All details given in good faith but without guarantee.

Speed and consumption: routing service should be MARINCOM
Without guarantee.

Owners Confirm:
- Vessel to be fully P + I covered for the entire duration of charter party.
- Vessel is fully insured for H + M during duration of voyage with recognised international insurers.
- Vessel is a SDBC vessel with no obstacles/stanchions in holds.
- Cargo to be loaded/stowed direct onto clear and unobstructed tanktop in lower holds only.
- Vessels tanktop is of steel construction and in good condition.
- Vessels holds/hatches are free of any obstacles/bulkheads/etc.
- Vessel is suitable for grab discharge.
- Vessel to be fully classed and fully certificated for duration of the voyage with Lloyd's highest class or equivalent.
- Vessel is not black listed by U.S.A./Arab countries or any other countries and authorities

Owners warrant that the currency of this Charter Party:
- Vessel shall not change Ownership without Charterers consent.
- Vessels hull and machinery insurance shall be fully maintained and will not be changed
- Vessel P + I cover shall be fully maintained.
- Vessel ISM / ISPS / ITF (or equivalent) certified.
- Bimco ISM / ISPS clauses to be incorporated in Charter Party.
Owners confirm that vessels certificates and documents will be valid for the entire duration of the charter.



## RIDER CLAUSES TO M.V "KAROLINA"
## CHARTER PARTY DATED 20TH JUNE 2007

**54.**
Bunkers on delivery to be about 550/650 metric tons IFO and about 55/70 metric tons MDO. Bunkers on redelivery to be about the same quantities as on delivery.

Prices both ends to be U.S.$ 350 per metric ton IFO and U.S.$ 565 per metric ton MDO. Charterers to take over and pay for value of bunkers onboard on delivery and have the right to deduct for value of bunkers on board on redelivery together with last sufficient hire payment.

The Charterers shall supply bunkers for burning in the vessel's engines and auxiliaries which conform to the specification(s) as set out in vessel's description (Cl.53.). The Owners reserve their rights to make a claim against the Charterers for any damage to the main engines or the auxiliaries proved to he caused by fuels not complying with the agreed specification(s).

Additionally, if bunker fuels supplied is proved not to be in conformity with the mutually agreed specification(s) for burning in the Vessel's main engines or auxiliaries, the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.

**55.** The Charterers may supply an independent weather bureau advice to Master during voyages specified by the Charterers. The Master to comply with the reporting procedures of the weather bureau. However, the Master remains responsible for the safe navigation and choice of route.

For the purpose of this Charter Party, "Good Weather Conditions" are to be defined as weather conditions in wind speeds not exceeding Beaufort Force 4 and Douglas Sea State 3 and no adverse currents/swell.

Evidence of weather conditions to be taken from vessel's deck logs and ocean routing service reports. In the event of discrepancy between the deck logs and the independent weather bureau's reports, Owners and Charterers to attempt to resolve any discrepancies or disputes amicably, failing which an independent weather routing company to be jointly appointed but at Owners cost, whose decision in respect of the terms and conditions of the Charter Party to be final and binding.

### 56. Hold Condition en First Voyage
Vessel on her arrival first load port of first voyage to have all holds/cargo carrying compartments clean, dry, free of loose rust scale and cargo residues and ready in all respects to the satisfaction of the Independent Surveyor and/or such other recognized local authority or official as local regulations or Shippers may require to receive the intended cargo which the vessel may be required to load.



## RIDER CLAUSES TO M.V "KAROLINA"
## CHARTER PARTY DATED 20TH JUNE 2007

If on presentation for loading at first load port on first voyage the vessel should fail to pass the above cargo survey, then all expenses for cleaning to be for Owners' account, and the vessel to be off hire from time of failing inspection until she is in all respects ready to load and survey passed. If some holds/cargo carrying compartments are not accepted, Charterers shall have the option of accepting the vessel with those which are accepted, and in that case, Charterers shall pay hire proportionate to the number of holds/cargo carrying compartments which have passed survey, however, if thereafter there should be any delay owing to non-acceptance of any hold/cargo carrying compartment, vessel shall be wholly off-hire until the loading program can be truly resumed.

In case of vessel failing cargo holds survey, Owners immediately to take all necessary steps at their expense to have the vessel passed with minimum delay including hiring shore labor/equipment, if necessary.

**57.**
Should the Owners have any taxes levied on the vessel and/or Owners by US Authority for Freights, sub- freights or sub-hires due to the commercial trading of the vessel by Charterers, then Charterers to refund same to Owners.

**58.**
The vessel has hoppered holds, with no frames extending down to tank tops The holds have no obstacles, obstructions, pillars, wood in holds and on tank tops, is free of corrugations and has no cargo battens. The vessel's tank top is steel, strengthened and suitable for grab discharge.
Charterers to have the option to use if available at the port Charterers to use rubber- wheeled bulldozers/pay loaders/fork lift trucks in vessel's holds, provided gross laden weight not exceeding the tank top strength.

If required, vessel to lift on board, shift from hold to hold and discharge the bulldozers etc., by use of vessel's gear.

**59.**
Without prejudice to the ultimate responsibility of either party, Charterers will not grant extension of time beyond the statutory one year of the Hague Rules in all cases of claimed damage or loss of cargo involving their possible liability without Owners' prior express written authorisation.

**60.**
If Steel cargo or bagged agri-products are loaded then Owners/Charterers to appoint Surveyor nominated by Owners P & I Club to perform pre-shipment and outturn survey and cost of pre-shipment and outturn cargo condition surveys to be equally shared between Owners and Charterers. The survey for bagged agri-products to take place only if they are available and visible prior to shipment, otherwise the pre-shipment survey to be performed just prior to loading. Charterers to endeavor to give Owners not less than 48 hours notice, Saturdays, Sundays and holidays excluded, of their Intention to toad any steel/bagged agriproduct cargo under this Charter.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**61.**
GMT to apply when calculating actual time vessel on hire.

**62.**
Compulsory shore watchmen to be for Charterers account.

**63.**
Charterers have the option to breach Institute Warranty Limits (subject to Owners prior approval which not to be unreasonably withheld) against paying additional premium on hull and machinery according to vouchers from Underwriters showing additional premium net of all rebates. Amount not to exceed the lowest premium obtainable on the London market.

**64.**
Crew to assist during loading operations with lashing cargo and to maintain same in good order during sea passage, and to remove same at the discharging port, or if possible, prior to reaching berth and to secure/lash cargo for passage between the discharging ports. But Owners not to be responsible for any delay, nor efficiency of crew during such work. Charterers to pay crew bonus for such work. Bonus amount to be agreed directly between Charterers and Master and paid to Master.

**65.**
Vessel to provide on board General Arrangement Plan, Trim Tables/Scale etc., and Owners always to remain solely responsible for the correctness of same.

Vessel has on board valid Grain Loading Booklet in accordance with SOLAS 1974 Regulations and IMCO Regulations 264 (VIII) as adapted in 1974.

Furthermore, vessel to have on board approved table for heeling moment for "filled hold untrimmed ends" in accordance with IMCO BC XIX/lnf. 4.

If required by Charterers, Owners to courier to the Charterers Capacity Plan, Deadweight Scale and General Arrangement Plan latest within 7 days after fixing.

**66. Bimco Double banking Clause.**
(a) The Charterers shall have the right, where and when it is customary and safe for vessel of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

(c) Without the prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as proved in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(e) The Charterers hall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**67.**
Owners have the option to bunker the vessel on last voyage prior to redelivery provided same does not interfere with Charterers operations of the vessel.

**68.**
If so required by Time Charterers, the vessel may be ordered to load from or to discharge alongside into a seagoing vessel at a recognized safe top-off or lightening place or anchorage inside or off port where customary for such operations to be performed. Charterers to provide adequate fenders and lines for the entire operation and to pay all extra port expenses involved including all/any extra insurance. The whole operation to be under Master's supervision and to his complete satisfaction with regard to the safety of his vessel.

Delivery of cargo once over-side into the daughter vessel in the case of discharging to constitute right and true delivery under the relative Bills of Lading for that voyage. Charterers to give Owners 96 hours clear notice of their intention to perform either such operation, advising approximate type/nature and quantity of cargo involved and the description of the other vessel(s) concerned.

The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation'.

**69.**
This contract to be kept strictly private and confidential by all parties.

**70.**
When sailing to/ex USA or any similar countries that require sending of electronic notices, such as electronic Notice Of Arrival (NOA) or electronic Notice Of Departure (eNOD) same to be arranged and taken care of by the Charterers. Owners to pass to Charterers all information they require provided asked within Owners normal office hours, Saturdays, Sundays and Holidays excluded.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**71.**
Owners warrant that the vessel is fitted for the transit of the Suez and Panama Canal in loaded and/or ballast condition and complies with all and any regulations of the relevant canal authority and shall not be subject to any conditions of transit not customarily required by the relevant canal authority whether pursuant to their regulations or otherwise. Should the vessel not comply with the warranties contained in this Clause and/or any regulations or conditions of transit laid down by the relevant canal authority, Charterers may suspend hire for all time lost and Owners to pay all expenses resulting as a consequence of Owners failure to comply with this warranty.

**72.**
Deleted

**73. ISM Clause (BIMCO Standard ISM Clause)**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "The Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.
Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "The Company" to comply with the ISM Code shall be for the Owners account.

**74.**
Deleted.

**75.**
If the original bills of lading should not be available at the port of discharge at the time when the vessel is ready to commence discharge, master/Owners shall allow Charterers/receivers to discharge and release entire cargo against presentation of the a letter of indemnity in Owners P&I club wording signed by Charterers' authorized signatory only.

**76.**
If major war breaks out between any two or more of the following countries:
Norway, United Kingdom, U.S.A., CIS, People's Republic of China, directly affecting the performance of this charter, both Owners and Charterers shall have the option of cancelling this charter.

Whereupon Charterers shall redeliver vessel to Owners, if she has cargo on board, after discharge thereof at destination, or if debarred from reaching or entering it, at a near open and safe port as directed by Charterers, or if she has no cargo on board, at a port at which she stays or if at sea, at a near and safe port as directed by Charterers.

In all cases hire shall be paid until vessel's redelivery



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**77.**
If required by Charterers during the currency of this Charter Party but prior loading operations, vessel to be examined for leakages, from ballast and wing tanks into main holds and hatch covers to be hose-tested for water-tightness, which will be effected with the assistance of vessel's Crew and equipment, which assistance to be free of expense to Charterers, provided adequate equipment available on board, failing which same to be supplied/ delivered by Charterers/Shippers at their risk and expense and in their time.

The test for the hatch covers water tightness shall be effected by using the vessel's regular on deck fire hose with a pressure of two bars and at a distance of 1.5 meters'. If repairs are required, then the Surveyor shall give his final approval before loading.

**78. BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES**
**(a) (i)** From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS ( Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the 1 Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Chatterers. The Owners shall provide the Charterers with the fu style contact details of the Company Security Officer (CSO).

**(ii)** Except as otherwise provided i this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

**(b) (i)** The Charterers shall provide the CSO and the Ship Security Officer 4 (550)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:
"The Charterers shall provide the Owners with their full style contact details and, where Sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

**(ii)** Except as otherwise provided in this Charter Patty, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Chatterers to comply with this Clause shall be for the Charterers' account.

**(c)** Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account; unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.



## RIDER CLAUSES TO M.V "KAROLINA"
## CHARTER PARTY DATED 20TH JUNE 2007

**(d)** If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify (the paying party.

**79.**
If required by Charterers, discharging quantity will be ascertained by shore installation or by draft survey. In case of draft survey, discharged quantity is to be ascertained by an initial final draft survey at the ports of discharging, which is to be conducted jointly by Master acting on Owners' behalf and Charterers' Receivers' appointed Surveyor.

In case of dispute, Owners will appoint their P & I Club representative Surveyor, who to attend together with Charterers'/ Receivers' Surveyor. The joint decision of both Surveyors will be final and binding for both parties.

**80.**
If required the Charterers may place one original Bill of Lading on board the vessel against marking all original Bills of Lading with the following Clause:

"One original Bill of Lading carried on board against which the cargo may be properly released against instructions received from the Charterers. It is also agreed that Owners have a standing instruction to discharge against the Bill of Lading carried on board and will do so unless instructed otherwise".

Congen Bills of lading or other recognized/approved bills of lading form to be used. No liner/no through bills of lading to be issued.

**81.**
If required by Charterers "Clean on Board" Bills of Lading to be signed. Master has the right to reject damaged cargo, but Charterers have an obligation to provide sound cargo and Vessel to remain on hire.

**82.**
Owners are to give Charterers 5 days approximate notice and 3/2/1 days definite notice of vessel's delivery and are to let Charterers know immediately of any change in vessel's position.

**83.**
The Master shall supervise the stowage of the cargo thoroughly and let one of his Officers control all the loading, handling and discharging of the cargo and he is also to furnish the Charterers with stowage plans for each cargo.

**84. Oil Pollution**
Owners guarantee to provide and maintain, during the entire Time Charter period, at their expense and catty on board the vessel a valid U.S. Certificate of Financial Responsibility. Owners also guarantee to have secured current certificates for other countries/federal states or municipal or other division or authority thereof, where guarantees are required. All such certificates to be valid throughout the entire time charter period.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

The Charterers shall in no case be liable for any damages as a result of the Owners' failure to obtain the aforementioned certificates. Time lost by non-compliance to be considered as off-hire and may be deducted from hire, and Owners hold Charterers harmless against any consequential losses, damages and expenses.

**85.**
Should the vessel be arrested during the currency of this Charter Party at the suit of any person and/or party having or purporting to have a claim against or any interest in the vessel, hire under this Chatter Party shall not be payable in respect of any period whilst the vessel remains unemployed as a result of such arrest from working thereby. If and when the vessel is off-hire under this Clause, cost of any extra fuel consumed in consequence thereof and all direct extra expenses to be for Owners account. if such seizure, arrest or detention, if any, not prevent Charterers' operations, Vessel to remain fully on hire.

**86. BIMCO Standard Law & Arbitration Clause 1998 - English Law, London Arbitration**
This contract shall be governed by and construed in accordance with English Law and any dispute arising out of or in connection with this contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) terms current at the time when the arbitration proceedings are commenced. The reference shall be to three Arbitrators. A party wishing to refer a dispute to arbitration shall appoint its Arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own Arbitrator within 14 calendar days of that notice and stating that it will appoint its Arbitrator as sole Arbitrator unless the other party appoints its own Arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own Arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its Arbitrator as sole Arbitrator and shall advise the other party accordingly. The award of a sole Arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole Arbitrator.

In cases where neither the claim nor any counter claim exceeds the sum of US$ 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

**87.**
If the Charterers have reason to be dissatisfied with the performance of the vessel and/or her Officers/crew, the Owners, upon receiving complaints shall immediately investigate and take appropriate steps to correct the situation.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**88.**
Notwithstanding anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to meet the maximum sulphur content requirements of any emission control zone when the Vessel is trading within that zone. The Charterers shall indemnify defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Clause. For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency. Bunkers to be stemmed from a registered supplier who will provide necessary documentation under the provisions of Marpol VI.

**89.**
Deleted.

**90.**
The Charterers or their Supercargo to have access to engine room, bridge and cargo holds of the vessel, provided that this does not interfere with the ship's daily operation.
Furthermore, at any stage of this Charter Party the Charterers representative(s) shall have free and unlimited access to all the vessel's holds, deck and engine log books, tank hold plan, calibration scales, and other plans as requested.

**91.**
The Owners guarantee the vessel to be always safe in ballast without requiring any solid ballast.

**92.**
Deleted.

**93.**
Deleted

**94.**
Owners guarantee that the vessel meets all U.S., Canadian and Australian plant and quarantine regulations and has not called any Russian Pacific port since January 1997.

Furthermore, Owners guarantee the vessel is free of any stage of Gypsy Moth life, be it in the form of egg masses, larvae or live animals. Costs and consequences due to vessel not being able to enter U.S., Canadian and Australian ports or not being passed for loading by U.S., Canadian and Australian Authorities on account of Gypsy Moth infestation or any failure to comply with local plant and quarantine regulations to be for Owners' account.

**95.**
Deleted



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**96.**
The Terms and conditions under which the vessel's officers and crew are employed in accordance with and acceptable to local labour union, which is affiliated to ITF.

The Owners of the vessel guarantee that the minimum terms and conditions of employment of the crew of the vessel are now and will be prior presentation of the vessel and remain for the period of this Charter party covered by ITF agreement or a bona fide trade union agreement acceptable to the ITF.

Owners are obliged to deliver and maintain throughout the currency of this Charter Party the vessel, her Crew and anything pertaining hereto supplied with up-to-date and complete certificates (including Oil Pollution Certificates), approvals, equipment and fittings, enabling the vessel and her Crew to trade within the trading limits and to load, carry and discharge all cargoes permitted under this Charter Patty.

Officers and Crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available on board, enabling the vessel to obtain free pratique by radio.

If requested, Owners to provide Charterers with copies of any and all such certificates/approvals. Any time lost and all extra directly related expenses resulting from Owners' non compliance with the above to be for Owners' account and same may be deducted from hire.

**97.**
Owners guarantee that the vessel is entered and shall remain entered in a Protection and Indemnity Association, which is a member of the Group of International P & I Clubs, for the duration of this Charter Party. Entry shall include, but not to be limited to, ordinary cover for cargo claims.

It shall be considered a fundamental breach by Owners if the vessel's P & I cover or class is cancelled or suspended during the currency of this Charter.

Charterers are not responsible for any accident or damage to or on board the vessel which is normally covered with Owners' Hull and Machinery policy unless caused by Charterers I Charterers' Agents / stevedores /Charterers' servants negligence / improper handling.
The Charterers to maintain a valid first class P and I cover for their respective liabilities during the currency of this Charter Party, failing which it shall be considered a fundamental breach of this Charter Party by Charterers.

Head Owners P and I Club: North of England.
Charterers P and I Club: To be advised.
Hull and Machinery: USD 11 mill.
Hull and Machinery insured: Croatian Insurance. Zagreb.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**98.**
Vessel to be delivered with valid deratting or deratting exemption certificate on board and if this does not cover the whole period of the Charter and renewal of certificate or fumigation is necessary, cost of same and delay of vessel and any expenses incurred therefrom, to be for Owners account.

**99.**
Deleted

**100. Trading Limits**
World Wide trading within IWL always accessible, always afloat and always via safe passages, safe ports safe berths safe anchorages, but in any case excluding Albania, Lebanon, Israel Turkish occupied Cyprus, Syria, Yemen, Guinea Bissau, Nigeria, Congo, Congo DRC, Angola, Libya, Djibouti, Eritrea, Liberia, Tanzania, Somalia, CIS/Asian Pacific Coast ports or areas where there is a risk of gypsy moth infestation as defined by the USDA and/or Canadian coast dept of transport, New Zealand, Cambodia, Burma, North Korea, Iraq, any war zone as defined by Lloyds and any places from time to time excluded by order of the un or by order of Vessel's flag. Trading to Cuba is allowed only with us approved cargo, Charterers to provide to Owners P License' for their consideration.

No direct trading between Taiwan and PR China.

The Vessel will be allowed to trade in Baltic during season only. Vessel not to trade in ice, Vessel not to follow icebreaker, Vessel not to force Ice.

Bagged cargo destined for discharge in Africa always excluded. Charterers undertake liability for all cargo claims for shortage in Africa which to be for Charterers account and handled by Charterers P and I club who will issue any and all guarantees required by the receivers as per Bs/L in order to release the vessel from any arrest/detention/delay and the vessel will be on-hire all time during such arrest or detention or delay whatsoever, but Owners are under the obligation to assist Charterers in defending such cargo claim by providing ship's records or any other information required by Charterers and or their P and I club.

**101.**
Owners' rights and obligations under this Charter party are strictly and irrevocably subject to safe legal and physical delivery of the Vessel under the terms and conditions set out in Memorandum of Agreement dated 14th June 2006 and Addendum No I dated 14th June 2006 signed with the Sellers, Messrs. Angel sea Maritime Inc. Monrovia, Liberia otherwise this Charter party is not legally binding the Owners at all.

**102.**
Deleted.

**103.**
Deleted.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**104. Grab Operation**
Deleted.

**NEW BOTH TO BLAME COLLISION CLAUSE**
If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the Laws of the United States of America, the following clause shall apply:

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the earner in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owner to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

**GENERAL AVERAGE AND THE NEW JASON CLAUSE**
General Average shall be payable according to the York/Antwerp Rules, 1974 as amended 1990, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:-

**NEW JASON CLAUSE**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as hilly as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges there shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery.



**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**BALTIME 1939 WAR CLAUSE**

**(A)**
The vessel unless the consent of the Owners to be first obtained not to be ordered nor continue to any place or on any voyage not be used on any service which will bring her within a zone which is dangerous as the result of any actual or threatened act of war, war hostilities, warlike operations, acts of piracy or of hostility or malicious damage against his or any other vessel or its cargo by any person, body or state, whatsoever, revolution, civil war, civil commotion or the operation of international law, nor be exposed in any way to any risks of seizure, capture, penalties or any other interference of any kind whatsoever by the belligerent or fighting powers or parties or by any Government or Ruler.

**(B)**
Should the vessel approach or be brought or ordered within such zone, or be exposed in any way to the said risks, (1) the Owners to be entitled from time to time insure their interests in the vessel and/or hire against any of the risks likely to be involved thereby on such terms as they shall think fit, the Charterers to make a ref to the Owners of the premium on demand; and (2) notwithstanding the terms of Clause 11 hire to be paid for all time lost including any lost owning to loss of or injury to the Master, Officers, or crew or to the action of crew refusing to proceed to such zone or to be exposed to such risks.

**(C)**
Deleted

**(D)**
The vessel to have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or in any other wise whatsoever given by the Government of the nation under whose flag the vessel sails or any other government or any person (or body) acting or purporting to act with the authority of such Government or by any community or person having under the terms of the war risks insurance on the vessel the right to give any such orders or directions.

**(E)**
In the event of the nation under whose flag the vessel sails becoming involved in war, hostilities, warlike operations, revolution, or civil commotion, both the Owners and the Charterers may cancel the Charter and, unless otherwise agreed the vessel to be redelivered to the Owners at the port of destination or, if prevented through the provision of section (A) from reaching or entering it, then at a near open and safe port at the Owners' option, after discharge of any cargo on board.

**(F)**
If in compliance with the provisions of this Clause anything is done or is not done, such not to be deemed a deviation.

**ICAP**HYDE

shipbrokers

**RIDER CLAUSES TO M.V "KAROLINA"**
**CHARTER PARTY DATED 20TH JUNE 2007**

**CHAMBER OF SHIPPING VOYAGE CHARTER CLAUSE PARAMOUNT, 1958**
Notwithstanding anything herein contained no absolute warranty of seaworthiness is given or shall be implied in this Charter Party and it is expressly agreed that the Owners shall have the benefit of the "rights and immunities" in favor of the carrier or ship and shall assume the "responsibilities and liabilities" contained in the enactment in the country of shipment giving effect to the rules set out in the International Convention for the Unification of certain rules relating to Bills of Lading dated Brussels the 25th August, 1924 (the "Hague Rules"). If no such enactment is in force in the county of shipment the terms of Articles III and IV shall apply. Notwithstanding the provisions of Article IV, Rule 5, the Shipowner's liability (whether contested or not) in respect of any such claim shall be limited to pounds 200 sterling lawful money of the United Kingdom per package or unit of cargo (unless the nature and value of such cargo have been declared by the shipper before loading and inserted in the Bill of Lading) notwithstanding that some other monetary limit is laid down by the legislation to which the contract of carriage is subject.

If any provision of this Charter Party shall be repugnant to the said rules to any extent, such provision shall be void to that extent, but no further Any Bills of Lading issued pursuant to this Charter Party shall contain a clause paramount incorporating the Hague Rules whether they arc compulsorily applicable or not.

**P & I CLUBS OIL BUNKERING DEVIATION CLAUSE**
The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage thereof to proceed to any port or ports whatsoever, whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharge named in this Charter and there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of fuel tanks, deep tanks and any other compartment in which oil can be carried, whether such amount is or is not required for the Chartered voyage.

**BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES 2005**
(a) Without prejudice to anything else contained in this charter party, the Charterers shall supply fuels of such specifications and grades to permit the vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with regulations 14 and 18 of Marpol annex VI, including the guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this sub-clause (a).



## RIDER CLAUSES TO M.V "KAROLINA"
## CHARTER PARTY DATED 20TH JUNE 2007

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with sub-clause (a), the Owners warrant that:

(i) the vessel shall comply with regulations 14 and 18 of Marpol annex VI and with the requirements of any emission control zone; and

(ii) the vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.

Subject to having supplied the vessel with fuels in accordance with sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the vessel's failure to comply with regulations 14 and 18 of Marpol annex VI.

(c) For the purpose of this clause, "emission control zone" shall mean zones as stipulated in Marpol annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US environmental protection agency.